IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LANA LETNIANCHYN | ) | CASE NO. |
| 2919 Colorado Avenue | ) | |
| Lorain, Ohio 44052 | ) | JUDGE: |
|                 Plaintiff, | ) | |
| | ) | |
|            v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| RISER FOODS COMPANY | ) | |
| d/b/a GIANT EAGLE | ) | **JURY DEMAND ENDORSED** |
| 5300 Richmond Road | ) | **HEREIN** |
| Bedford Heights, Ohio 44146 | ) | |
| | ) | |
| **Serve also:** | ) | |
| CORPORATION SERVICE | ) | |
| COMPANY | ) | |
| Statutory Agent | ) | |
| 50 West Broad Street | ) | |
| Suite 1330 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
|     -and- | ) | |
| | ) | |
| HOLLY TAYLOR | ) | |
| 5300 Richmond Road | ) | |
| Bedford Heights, Ohio 44146 | ) | |
| | ) | |
|     -and- | ) | |
| | ) | |
| JAMIE MURPHY | ) | |
| 5300 Richmond Road | ) | |
| Bedford Heights, Ohio 44146 | ) | |
| | ) | |
|     -and- | ) | |
| | ) | |
| ANGELA GAROFALO | ) | |
| 5300 Richmond Road | ) | |
| Bedford Heights, Ohio 44146 | ) | |
| | ) | |
|     -and- | ) | |
| | ) | |
| | ) | |
| | ) | |



MAUREEN McGINNIS           )
5300 Richmond Road           )
Bedford Heights, Ohio 44146    )
                                       )
                Defendants.      )

Plaintiff, Lana Letnianchyn, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1. Letnianchyn is a resident of the city of Lorain, county of Lorain, state of Ohio.

2. Holly Taylor is a resident of the state of Ohio.

3. Jamie Murphy is a resident of the state of Ohio.

4. Angela Garofalo is a resident of the state of Ohio.

5. Maureen McGinnis is a resident of the state of Ohio.

6. Riser Foods Company d/b/a Giant Eagle ("Riser") is a foreign corporation with its principal place of business located at 5300 Richmond Road, Bedford Heights, Ohio.

7. At all times herein, Letnianchyn was acting in the course and scope of her employment.

8. At all times herein, Taylor was acting in the course and scope of her employment.

9. Taylor is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Riser and who acted directly or indirectly in the interest of the Riser in relation to its employees, and is an employer within the meaning of R.C. § 4112.01 et seq.

10. At all times herein, Murphy was acting in the course and scope of his employment.

11. Murphy is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Riser and who acted directly or indirectly in the interest of the Riser in relation to its employees, and is an employer within the meaning of R.C. § 4112.01 et seq.

12. At all times herein, Garofalo was acting in the course and scope of her employment.



13. Garofalo is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Riser and who acted directly or indirectly in the interest of the Riser in relation to its employees, and is an employer within the meaning of R.C. § 4112.01 et seq.

14. At all times herein, McGinnis was acting in the course and scope of her employment.

15. McGinnis is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Riser and who acted directly or indirectly in the interest of the Riser in relation to its employees, and is an employer within the meaning of R.C. § 4112.01 et seq.

## JURISDICTION AND VENUE

16. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Letnianchyn is alleging a Federal Law Claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601, et seq.

17. All material events alleged in this Complaint occurred in county of Letnianchyn.

18. This Court has supplemental jurisdiction over Letnianchyn's state law claims pursuant to 28 U.S.C. § 1367 as Letnianchyn's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

1. Letnianchyn began working for Riser as an apprentice pharmacy technician on or around August 9, 2008 at Riser's Westlake, Ohio location ("Westlake").

2. Letnianchyn was promoted to a pharmacy technician position.

3. In or around 2013, Letnianchyn was diagnosed with a Chondromalacia, a condition that caused pain in both of her knees.

The Employee's Attorney.™



4. As a result of her Chondromalacia, Letnianchyn is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

5. In the alternative, Defendants perceived Letnianchyn as being disabled.

6. In the alternative, Defendants perceived that Letnianchyn's medical condition constituted a physical impairment.

7. In the alternative, Defendants perceived Letnianchyn's disability to substantially impair one or more of her major life activities, including working.

8. Despite this actual or perceived disabling condition, Letnianchyn was still able to perform the essential functions of her job.

9. Letnianchyn submitted the recommended partial accommodation from her doctor that stated she should be allowed to sit for 10 to 30 minutes when her knees caused her pain during her shift.

10. Letnianchyn submitted this accommodation to Riser in 2013.

11. Letnianchyn submitted this accommodation to Riser in 2014.

12. In or around 2014, Letnianchyn began to be harassed by Murphy and other coworkers regarding her knee condition.

13. In or around 2014, when Letnianchyn sitting on a stationary chair in the pharmacy pursuant to her accommodation, Murphy told Letnianchyn that she was no longer allowed to sit down in the pharmacy.

14. Upon information and belief, multiple pharmacy technicians used a stationary chair or rolling chair to rest when the pharmacy was slow.

15. Murphy had never reprimanded any other pharmacy employee for sitting down while in the pharmacy.

The Employee's Attorney.™



16. The stationary chair was eventually removed from the Westlake pharmacy.

17. In or around May or June of 2014, Letnianchyn asked twice to be temporarily place in other available pharmacy positions that would allow her to sit or otherwise relieve pain in her knees while continuing to work.

18. Murphy and other pharmacy technicians gave Letnianchyn negative responses when she requested this accommodation.

19. On at least two occasions, Murphy sent Letnianchyn home and said that if Letnianchyn could not do the job then Letnianchyn needed to leave the pharmacy.

20. Each time, Letnianchyn responded to Murphy that she was capable of doing the job and that she only was requesting a reasonable accommodation.

21. Murphy refused to accommodate Letnianchyn and sent her home from work, causing her to lose income.

22. Murphy began allowing Letnianchyn's coworkers to refuse to switch Daily Grid tasks with Letnianchyn, even when it was a scheduled time to switch, which caused Letnianchyn to remain on a task that was hard on her knees for an extended period of time.

23. Before March 2, 2015, Murphy told Letnianchyn that Letnianchyn was no longer allowed to ask other pharmacy technicians to switch positions with her.

24. Upon information and belief, when pharmacy technician Katie Romig had a note from her doctor requesting an accommodation for her injured foot, Murphy allowed Romig to sit as needed and did not send Romig home from work.

25. In or around 2014, pharmacy employee Mike Conant injured his foot and was permitted to sit while working at the fill station.  Murphy allowed Conant an accommodation for his injured food and did not send Conant home from work.

The Employee's Attorney.™



26. At all times while employed at Riser, Letnianchyn was able to perform the essential functions of her job with or without accommodations.

27. The harassment from Murphy and other pharmacy employees at the Westlake location continued until Letnianchyn was transferred.

28. On or around November 14, 2014, Letnianchyn received a written warning for attendance ("November 14 Discipline")

29. The November 14 Discipline did not mention any previous corrective action.

30. The November 14 Discipline was never brought up in any subsequent meetings with management.

31. Murphy was responsible for creating the Daily Grid, a schedule that outlined the tasks to be completed by each pharmacy employee every two hours.

32. Letnianchyn requested that Murphy assign Letnianchyn tasks in one hour increments as an accommodation for her disability.

33. Murphy refused this accommodation request.

34. Prior to March 2, 2015, Murphy assigned Letnianchyn to the Fill Station to fill mediations for four consecutive hours.

35. Upon information and belief, no other pharmacy employee at the Westlake location had ever been assigned to the Fill Station for four consecutive hours or more.

36. Assigning an employee to the Fill Station for four consecutive hours or more is unsafe for patients.

37. Letnianchyn asked the floating pharmacist that day, Paul Grissinger, to change Letnianchyn's tasks on the Daily Grid due to the unfair and dangerous amount of time she was to spend at the Fill Station.

The Employee's Attorney.™



38. Grissinger did not change the Daily Grid.

39. The next day, Letnianchyn asked Jennifer Nardi to change the Daily Grid the Daily Grid due to the unfair and dangerous amount of time she was to spend at the Fill Station.

40. Nardi said that she would reexamine the Daily Grid but never made any changes.

41. The following day, Murphy reprimanded Letnianchyn for asking pharmacists to change the Daily Grid and told Letnianchyn to stop questioning what Murphy ordered and to, "just do it."

42. On or around February 12, 2015, Murphy sent a text to Letnianchyn and said that if Letnianchyn's "angriness [sic] and attitude doesn't change," then Murphy would begin writing Letnianchyn up.

43. Murphy threatened to have Letnianchyn transferred to another Riser location in front of pharmacy employee Mike Conant.

44. Murphy eventually began to grow violent in his harassment of Letnianchyn.

45. On or around February 26, 2015, when Letnianchyn realized that a customer had been over charged, she printed the necessary labels for Murphy to review.

46. Murphy was on a phone call, so Letnianchyn set the labels next to him.

47. Murphy ended the phone call, became angry with Letnianchyn, and threw the labels in Letnianchyn's face with two customers present and witnessing the altercation.

48. Letnianchyn began to cry and asked another pharmacy employee to take over the transaction so that Letnianchyn could excuse herself from customer view.

49. Letnianchyn reported this incident in her March 2, 2015 meeting with management.

50. On March 2, 2015, Letnianchyn had a meeting with Westlake store manager Mike Smith, McGinnis, Manager Brooke Robertson, and Union Representative Tom Foster to discuss the harassment and discrimination that Letnianchyn was experiencing in the Westlake pharmacy.

The Employee's Attorney.™



51. Smith agreed that the harassment Letnianchyn was experiencing was inappropriate and that there were a lot of unresolved conflicts.

52. Smith said that Letnianchyn was a great person.

53. Smith said that pharmacy management should have done a better job at resolving the situation and that Letnianchyn should have never needed to go so far as to request a meeting with corporate management.

54. Smith assured Letnianchyn that McGinnis and Robertson would investigate Letnianchyn's complaints and bring her back for a final follow up meeting.

55. Letnianchyn was never brought in for a follow up meeting.

56. On or around March 9, 2015, Murphy approached Letnianchyn and said, "It is not going to end well for you Lana."

57. On or around March 11, 2015, Letnianchyn was called into a meeting with Angela Garofalo, Murphy, and McGinnis.

58. Defendants refused to allow Letnianchyn to have union representation at the meeting.

59. When Letnianchyn attempted to bring up additional issues or things that had been unresolved, Garofalo would interrupt Letnianchyn and say that those present were not there to rehash past issues.

60. Garofalo told Letnianchyn that Letnianchyn would be given, "one more chance" but failed to clarify what Garofalo meant by this.

61. On or around June 22, 2015, Letnianchyn reiterated a request for an accommodation in the form of floor mats to allow standing to cause less pain.

62. Murphy told Letnianchyn that he, "Didn't want to hear [Letnianchyn] talking about [the accommodation] again to anyone."



63. On or around August 19, 2015, Letnianchyn was pulled into a meeting with McGinnis and Garofalo.

64. Letnianchyn requested union representation and Defendants resisted.

65. Garofalo told Letnianchyn that if Garofalo heard "one more thing" about Letnianchyn, then it would be "the end" for Letnianchyn.

66. Garofalo told Letnianchyn that if it would be a, "completely different conversation," if Garofalo heard anything else about Letnianchyn.

67. Garofalo then told Letnianchyn that Letnianchyn was being transferred to a Riser pharmacy that, "follows the rules."

68. Letnianchyn as transferred from Westlake location to Riser's Fairview Park, Ohio ("Fairview Park") location on or around August 23, 2015.

69. Prior to Letnianchyn's transfer, she was working an average of 42.91 hours per week.

70. Other pharmacy employees at the Fairview Park location would harass Letnianchyn for sitting when her knees caused her pain.

71. Taylor refused to stop the harassment even when Taylor witnesses the harassment directly.

72. On or around September 11, 2015, Letnianchyn was diagnosed with acute diverticulitis, a serious gastrointestinal illness.

73. As a result of her acute diverticulitis, Letnianchyn is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

74. In the alternative, Defendants perceived Letnianchyn as being disabled.

75. In the alternative, Defendants perceived that Letnianchyn's medical condition constituted a physical impairment.



76. In the alternative, Defendants perceived Letnianchyn's disability to substantially impair one or more of her major life activities, including working.

77. Despite this actual or perceived disabling condition, Letnianchyn was still able to perform the essential functions of her job.

78. Letnianchyn missed approximately four days of work in or around September 2015 when she was being diagnosed with acute diverticulitis.

79. Letnianchyn missed approximately four days of work in or around September 2015 when she was hospitalized with acute diverticulitis.

80. Letnianchyn provided all necessary physician documentation upon her return to work in order to have the absences excused.

81. On or around October 1, 2015, Letnianchyn asked McGinnis for assistance in obtaining FMLA paperwork.

82. McGinnis informed Letnianchyn that Letnianchyn needed to contact My HR Connections to obtain FMLA leave.

83. Letnianchyn contacted My HR Connections.

84. My HR Connections informed Letnianchyn that Letnianchyn's HR representative, McGinnis, would be the person in charge of helping Letnianchyn with the FMLA process.

85. On or around October 5, 2015, Letnianchyn again asked McGinnis for the FMLA paperwork so that she could secure FMLA leave related to her disabilities.

86. On or around October 6, 2015, Letnianchyn was suspended by Defendants pending further investigation.

87. The written suspension paperwork listed a previous disciplinary action on November 5, 2012, that Letnianchyn never actually received.

The Employee's Attorney.™



88. The written suspension paperwork listed a written warning for attendance, dated October 10, 2013, that Letnianchyn never actually received.

89. The written suspension paperwork listed a verbal warning for "failure to follow direction – obtain schedule" dated April 28, 2015, that Letnianchyn never actually received.

90. On or around October 29, 2015, Foster terminated Letnianchyn.

91. At the time of Letnianchyn's termination she was making $13.45 per hour.

92. At the time of Letnianchyn's termination she was averaging 27.32 hours per week.

93. Letnianchyn was never given a performance review while employed at Riser.

94. To the extent Letnianchyn had missed work, such absences should have been covered by FMLA leave because they were connected to Letnianchyn's serious health condition.

95. Letnianchyn did not receive all of the discipline referenced in her suspension paperwork.

96. By terminating Letnianchyn, Riser violated its own progressive discipline policy.

97. Defendants' purported reason for Letnianchyn's termination are pretext for FMLA interference.

98. Defendants' purported reasons for Letnianchyn's termination are pretext for disability discrimination.

99. Defendants' purported reasons for Letnianchyn's termination are pretext for Defendants' failure to accommodate Letnianchyn's reasonable accommodation requests.

100.    Defendants' did not proffer a legitimate non-discriminatory reason for terminating Letnianchyn.

101.    The above facts demonstrate that Defendants engaged in a pattern and practice of disability discrimination.

The Employee's Attorney.™



102.    The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

103.    The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful FMLA retaliation.

104.    There was a causal connection between Letnianchyn's disabilities and Defendants' termination of Letnianchyn.

105.    There was a causal connection between Letnianchyn's complaints about Murphy and Defendants' termination of Letnianchyn.

106.    There was a causal connection between Letnianchyn's request for FMLA leave and Defendants' termination of Letnianchyn.

<u>**COUNT I: DISABILITY DISCRIMINATION**</u>

107.    Letnianchyn restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108.    Letnianchyn suffers from a Chondromalacia.

109.    Letnianchyn suffers from acute diverticulitis.

110.    Letnianchyn is disabled.

111.    In the alternative, Defendants perceived Letnianchyn as being disabled.

112.    Letnianchyn's condition constituted a physical impairment.

113.    Letnianchyn's condition substantially impaired one or more of her major life activities including working.

114.    Defendants perceived Letnianchyn's condition to substantially impair one or more of her major life activities including working.

The Employee's Attorney.™



115.     Defendants treated Letnianchyn differently than other similarly-situated employees based on her disabling condition.

116.     Defendants treated Letnianchyn differently than other similarly-situated employees based on her perceived disabling condition.

117.     On or about October 29, 2015, Defendant terminated Letnianchyn's employment without just cause.

118.     Defendant terminated Letnianchyn's employment based her disability.

119.     Defendant terminated Letnianchyn's employment based her perceived disability.

120.     Defendant violated R.C. §4112.02 when it discharged Letnianchyn based on her disability.

121.     Defendants violated R.C. §4112.02 when it discharged Letnianchyn based on her perceived disability.

122.     Defendants violated R.C. §4112.02 by discriminating against Letnianchyn based on her disabling condition.

123.     As a direct and proximate result of Defendant's conduct, Letnianchyn suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: FAILURE TO ACCOMMODATE UNDER O.R.C. 4112.01 et. seq.

122. Letnianchyn informed Defendants of her disabling conditions.

123. Letnianchyn requested accommodations from Defendants to assist with her disabilities including providing a mat for her to stand on, allowing her to sit as needed when she was experiencing pain, and/or higher drawers to file prescription bags for customers.

124. Letnianchyn's requested accommodations were reasonable.

The Employee's Attorney.™



125. There was an accommodation available that would have been effective and would have not posed an undue hardship to Riser.

126. Defendants failed to engage in the interactive process of determining whether Letnianchyn needed an accommodation.

127. Defendants failed to provide an accommodation.

128. Defendants violated R.C. §4112.02 by failing to provide Letnianchyn a reasonable accommodation.

129. As a direct and proximate result of Defendants' conduct, Letnianchyn suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

130. Letnianchyn restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

132. Riser is a covered employer under the FMLA.

133. During her employment, Letnianchyn qualified for FMLA leave.

134. During her employment, Letnianchyn attempted to request FMLA leave by asking Defendants if he/she qualified to take FMLA leave.

135. Defendants failed to properly advise Letnianchyn of his rights under the FMLA.

136. Defendants unlawfully interfered with Letnianchyn's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

The Employee's Attorney.™



137. Defendants' act of refusing to provide Letnianchyn with her requested FMLA paperwork interfered with Letnianchyn 's FMLA rights.

138. Defendants violated section 825.300(c)(1) of the FMLA and interfered with Letnianchyn's FMLA rights when Defendants did not allow Letnianchyn to apply for FMLA.

139. As a direct and proximate result of Defendants' conduct, Letnianchyn is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT IV: RETALIATORY DISCRIMINATION

140. Letnianchyn restates each and every prior paragraph of this complaint, as if it were fully restated herein.

141. As a result of the Defendant's discriminatory conduct described above, Letnianchyn complained about the disability discrimination and failure to accommodate she was experiencing.

142. Subsequent to Letnianchyn reporting Murphy's disability discrimination and refusal to accommodate Letnianchyn's reasonable accommodation requests to Riser's corporate management, Murphy admitted that he was targeting Letnianchyn.

143. Subsequent to Letnianchyn reporting Murphy's disability discrimination and refusal to accommodate Letnianchyn's reasonable accommodation requests to Riser's corporate management, Letnianchyn received a suspension that cited disciplinary action she was never presented with.

144. Defendant's actions were retaliatory in nature based on Letnianchyn's opposition to the unlawful discriminatory conduct.



145.    Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

146.    As a direct and proximate result of Defendant's retaliatory transfer of Letnianchyn, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

147.    As a direct and proximate result of Defendant's retaliatory termination of Letnianchyn, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Letnianchyn demands from Defendants the following:

(a) Issue a permanent injunction:

(i)     Requiring Riser to abolish discrimination, harassment, and retaliation;

(ii)    Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii)   Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

The Employee's Attorney.™



  (v)  Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Riser to restore Letnianchyn to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Letnianchyn for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorney's fees and non-taxable costs for Letnianchyn claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

        */s/ Fred M. Bean*
        Fred M. Bean (0086756)
        **THE SPITZ LAW FIRM, LLC**
        25200 Chagrin Blvd., Suite 200
        Beachwood, OH 44122
        Phone: (216) 291-4744
        Fax: (216) 291-5744
        Email: fred.bean@spitzlawfirm.com

        *Attorney for Plaintiff Lana Letnianchyn*

The Employee's Attorney.™



## JURY DEMAND

Plaintiff Lana Letnianchyn demands a trial by jury by the maximum number of jurors permitted.

*/s/ Fred M. Bean*
Fred M. Bean (0086756)
**THE SPITZ LAW FIRM, LLC.**

The Employee's Attorney.™

